IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT BURKE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-3479 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| THOMAS J. DART, in his official | ) | |
| capacity as Cook County Sheriff, and | ) | |
| COOK COUNTY, as indemnitor, | ) | |
| | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scott Burke brings this action against Thomas J. Dart, in his official capacity as Cook County Sheriff, and Cook County, asserting disability discrimination and retaliation in violation of the Americans with Disability Act (ADA). Before the Court is Defendants' motion to dismiss the first amended complaint [16]. For the reasons stated below, Defendants' motion [16] is granted, and Cook County is dismissed from the action, as "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." *Carver v. Sheriff of LaSalle Cnty., Ill.*, 324 F.3d 947, 948 (7th Cir. 2003). Plaintiff may replead no later than October 14, 2022. If Plaintiff does not file an amended complaint by that date (or any extension granted by the Court), the case will be dismissed with prejudice and a final judgment will be entered.

**I.     Background[1]**

Plaintiff Scott Burke began working as a Cook County deputy sheriff in June 2004. [13 at

---

[1] For purposes of Defendants' motion to dismiss, the Court accepts as true all well-pled allegations set forth in the amended complaint [13] and draws all reasonable inference in Plaintiff's favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

¶ 10.] At some point between 2004 and 2009, Plaintiff sustained a workplace injury, and in 2009 he was diagnosed with multiple lumbar herniations, formal and spinal stenosis. [*Id.* at ¶ 11.] His disabilities limit his ability to do certain life activities, including bending and lifting. [*Id.*] Plaintiff spent some time on workers' compensation leave, but it is not clear from the complaint exactly when or for how long. See [13 at ¶ 13.] In 2012, after returning from leave, CCS provided Plaintiff with workplace accommodations by assigning Plaintiff to work in District 3 Court in Rolling Meadows. [*Id.*] He was responsible for watching the east security door, monitoring the judicial elevator, and overseeing the parking lot. [*Id.*] From 2012 until September 2018, Plaintiff performed all of his duties with the accommodations provided. [*Id.* at ¶ 14.]

In September 2018, CCS informed Plaintiff that he had to either forfeit the workplace accommodations previously granted and return to "full duty" or submit a request for accommodations. [13 at ¶ 15.] If he failed to take one of these actions, he would lose his deputy sheriff position. [*Id.*] On October 17, 2018, Plaintiff submitted an accommodation request to maintain the same accommodations that had been provided to him in 2012. [*Id.* at ¶ 16.] On an unspecified date in March 2020, CCS informed Plaintiff of another deputy sheriff assignment to which he could be assigned, but the following day CCS informed him that it would no longer transfer him, and he would have to either return to full duty or lose his position. [*Id.* at ¶ 17.] Plaintiff filed a charge of disability discrimination with the EEOC on June 24, 2020. [13 at ¶ 18.] Soon after Plaintiff filed his charge with the EEOC, CCS advised him again that he had to forfeit his "ADA status" and accommodations and report to full duty or lose his deputy sheriff position. [*Id.* at ¶ 19.]

In October 2020, Plaintiff underwent surgery (the complaint does not specify the type or surgery or why). [13 at ¶ 20.] After recovering from surgery, he informed CCS that he was able

2

to return to work with accommodations. [*Id.* at ¶ 21.] CCS denied his request to return to work and informed him it could not accommodate him. [*Id.* at ¶ 22.] As a result, Plaintiff has not worked since November 21, 2020, and he maintains that he has been on disability leave ever since. [*Id.* at ¶ 22.]

On April 6, 2021, in response to his June 2020 charge, Plaintiff received from the EEOC a notice of his right to sue within 90 days [13 at ¶ 18] see also *id.* at 12]. On August 18, 2021, Plaintiff filed another discrimination charge with the EEOC alleging that CCS denied him reasonable disability accommodations and retaliated against him for having filed his first EEOC charge. [*Id.* at ¶ 23.] He received a notice of his right to sue from the EEOC on September 16, 2021. [*Id.*; see also *id.* at 17.]

Plaintiff initiated this action on June 29, 2021 [1] and brings two claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., asserting failure to accommodate (Count I) and retaliation (Count II) seeking injunctive relief, lost wages and other economic damages, attorneys' fees and costs, and any other relief the Court finds just. [13.] Defendants move to dismiss both claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II. Legal Standard**

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v.*

3

*Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

**III.    Analysis**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Discrimination can take the form of treating a disabled employee differently from other workers or failing to make reasonable accommodations to the known limitations of the employee." *Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020).

**A.    Failure to Accommodate**

"To establish a claim for failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).

Defendant asserts that Plaintiff has not plausibly alleged that he is a qualified individual with a disability, or that Defendant failed to reasonable accommodate that disability. The Court agrees.

4

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include (but are not limited to) "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending," among others. *Id.* § 12102(2)(A).

Plaintiff establishes in his amended complaint that in 2009, after sustaining a workplace injury, he was diagnosed "with the recognized disabilities of multiple lumbar herniations, formal and spinal stenosis, which substantially limit him in major life activities including, but not limited to, bending and lifting." [13 at ¶ 11.] The complaint does not provide any additional information about his diagnosis, such as, for example, the nature of the workplace injury, any treatment he underwent, nor any other major activities impacted by the injury and subsequent diagnosis. Missing most notably from the description of his disability are any facts establishing that his 2009 diagnosis carried on through 2018 and 2020, the periods during which he claims Defendant failed to reasonably accommodate his disability. Plaintiff notes that he had surgery in October 2020 [see 3 at ¶ 21], and that eventually he "recovered from surgery," [see *id.* at ¶ 22], but he does not allege any facts tying his 2020 surgery to his 2009 diagnosis.

Defendant asserts that these facts fail to demonstrate that Plaintiff was disabled in 2018 and 2020 when the alleged disability discrimination occurred. The facts describing Plaintiff's disabilities are indeed quite thin. But whether Plaintiff has adequately pled having a disability is ultimately insignificant, because his allegations with respect to showing that he is a *qualified* individual are manifestly deficient. Thus, even assuming that Plaintiff has adequately alleged that he was disabled during all relevant time periods, his failure to accommodate claim still fails.

5

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff asserts that he "is a qualified individual with a disability because, from 2012 until September 2018, he was able to perform the essential functions of his position as a deputy sheriff with the accommodation that was granted to him." [13 at ¶ 14.] He continues, "[i]f Plaintiff could not have performed the essential functions of his deputy sheriff position, then he would not have been able to remain employed in that position for over 6 years." [*Id.*]

Despite baldly asserting that he is a qualified individual with a disability, Plaintiff has not alleged any facts to support that conclusion. Indeed, "a complaint alleging discrimination under the ADA must plead with adequate specificity that the plaintiff is qualified to perform the essential functions of the job with or without reasonable accommodation," and "simply pleading that one is a qualified individual with a disability is 'precisely the type of conclusory, formulaic assertion that was disapproved of by *Twombly*.'" *Mack v. Chi. Transit Auth.*, 2020 WL 3414952, at *3 (N.D. Ill. June 22, 2020) (quoting *EEOC v. Supervalu, Inc.*, 674 F. Supp. 2d 1007, 1014 (N.D. Ill. 2009). Here, Plaintiff fails to provide any facts regarding the essential functions of a deputy sheriff. The Court cannot know whether Plaintiff was able to perform the essential functions of his job as a deputy sheriff when Plaintiff has not provided any information as to what those essential functions are. Plaintiff states that while being accommodated with a position in Rolling Meadows, he was responsible for "watching the east security door, monitoring the judicial elevator, and overseeing the parking lot" [13 at ¶ 13], but he provides no information whatsoever as to what his duties would have been had he not been accommodated with a position in Rolling Meadows.

Furthermore, Plaintiff fails to allege any facts with respect to what those duties entail, and how exactly his employer accommodated his disability. Without any facts describing the essential functions of the job of a deputy sheriff or his ability to perform them, or any information as to how the Rolling Meadows assignment accommodated his disabilities, Plaintiff fails to state a failure to accommodate claim. See *Lee v. Chi. Transit Auth.*, 2016 WL 5580483, at *4 (N.D. Ill. Nov. 14, 2016), *aff'd*, 696 F. App'x 752 (7th Cir. 2017) ("Lee's third amended complaint fails to allege what his job duties were, which duties he could perform, and which duties he could not perform due to his health issues. The Court is thus left to speculate regarding the essential functions of a Transportation Manager, whether Lee is qualified to perform those functions with or without reasonable accommodation, and what such accommodation might be."); see also *Mack*, 2020 WL 3414952, at *3 ("Because Ms. Mack does not state facts regarding her ability to perform her job's essential functions, she has not properly stated a disability claim under the ADA.").

**B.     Retaliation**

Plaintiff's failure to adequately allege that he is a qualified individual with a disability does not preclude the possibility of a viable retaliation claim. See *Pack v. Ill. Dep't of Healthcare and Family Servs.*, 2014 WL 3704917, at * (N.D. Ill. July 25, 2014). "'The Act prohibits an employer from retaliating against an employee who has raised an ADA claim, whether or not that employee ultimately succeeds on the merits of that claim.'" *Id.* (quoting *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007). To state a retaliation claim, "a plaintiff must prove '(1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection between the two.'" *Koty v. DuPage Cnty., Ill.*, 900 F.3d 515, 519 (7th Cir. 2018) (quoting *Dickerson v. Bd. of Trs. Of Comty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)).

7

It is undisputed that filing a charge with the EEOC is a protected activity. See *Koty*, 900 F.3d at 520.  However, Defendant asserts that Plaintiff's retaliation claim fails because he fails to adequately plead that he suffered an adverse employment action, and that his EEOC charge caused the adverse action allegedly taken against him.

As an initial matter, and as Defendant points out, Count II seems to claim that Defendant retaliated against him by not allowing him to return to his Rolling Meadows position, which is simply another way of asserting that Defendant failed to grant his accommodation request.  But even looking beyond the claim's redundancy, Plaintiff's claim fails because he has not adequately alleged that he suffered an adverse employment action, and that it was caused by his EEOC charge filing.

Plaintiff asserts that Defendant retaliated against him "for engaging in protected activity when it failed to allow him to return to work after his surgery." [13 at ¶ 36.]  This claim does not hold up when the facts in the complaint are considered chronologically.  The complaint states that Plaintiff was informed in September 2018 that he "either had to forfeit the workplace accommodations previously granted to him and report full duty, submit a request for accommodations, or lose his deputy sheriff position." [13 at ¶ 15.]  Soon after, Plaintiff submitted his accommodation request, which Defendant denied in March 2020 when it "advised Plaintiff that it had another deputy sheriff assignment that it was willing to transfer him into," a statement which was rescinded the following day, when "he was again told that he either had to either [sic] return to work full duty or lose his deputy sheriff position." [13 at ¶ 17.]  A few months later, in June 2020, Plaintiff filed his first EEOC discrimination charge, and shortly after "was again advised by CCS that he either had to forfeit the ADA status and workplace accommodations previously granted to him and report full duty or lose his deputy sheriff position." [13 at ¶¶ 18-19.]  In other

8

words, Defendant denied Plaintiff's accommodation request before he filed the first EEOC charge and communicated the same message to him again shortly after he filed the charge. "A plaintiff can prove the 'causal link' by demonstrating that [his] employer would not have acted adversely 'but for' the protected expression," *Pack*, 2014 WL 3704917, at *4, and this sequence of events disproves such theory.

Then, after undergoing surgery (which may or may not have been related to Plaintiff's alleged disability), Plaintiff once again requested to return to his Rolling Meadows position as a disability accommodation, as he "advised CCS that he could return to work with an accommodation in his former assignment." [13 at ¶¶ 20-21.] Defendant, having denied this exact request already, once again declined to give Plaintiff the position he sought, and Plaintiff filed a second disability charge with the EEOC based on that denial. These allegations also fall short of alleging the elements of an ADA relation claim and Count II thus fails. See *Pack*, 2014 WL 3704917, at *4 ("These allegations are insufficient to serve as an adverse employment action for an ADA retaliation claim because they merely restate Count I.").

## IV.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss [16] is granted. Plaintiff may replead no later than October 14, 2022. If Plaintiff does not file an amended complaint by that date (or any extension granted by the Court), the case will be dismissed with prejudice and a final judgment will be entered.

Dated: September 12, 2022

_____
Robert M. Dow, Jr.
United States District Judge

10